**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID FURRY, and DIANE NYE, | ) | |
| | ) | |
| Plaintiffs, | ) | No. 08 CV 6138 |
| | ) | Judge Blanche M. Manning |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

On a rainy spring afternoon, a passenger car and a postal vehicle made contact in Berwyn, Illinois. Each driver blamed the other, and the parties proceeded to trial without a jury to sort out who was at fault.

Pursuant to Federal Rule of Civil Procedure 52(a), and after carefully observing the trial and reviewing the transcript and trial exhibits, the court enters the following written findings of fact and conclusions of law based upon consideration of all the admissible evidence, as well as the court's own assessment of the credibility of the trial witnesses.

**FINDINGS OF FACT**

The following facts are based on the testimony elicited at trial, and are undisputed except where noted.

The accident happened on May 15, 2007, on the 1900 block of Grove Avenue in Berwyn. Grove Avenue is a one-way, southbound street with parallel parking permitted along both curbs. Grove Avenue was not on the route on which postal employee Ronald Williams was supposed to have been delivering mail that day, but his girlfriend lived on that street, and Williams stopped there because it was raining heavily and he wanted to dry himself off. (Williams was subpoenaed to testify by both the plaintiffs and the government, but he did not comply with the subpoena. The parties did not ask the court to compel Williams' presence and, instead, they agreed to introduce as evidence a transcript of Williams' deposition.)

At the time of the accident, Williams, having returned to his postal vehicle, was sitting in the driver's seat. The postal vehicle was parked on the west side of Grove Avenue, and the front was "kind of sticking out" at an angle towards the street. Williams Dep. at 30:1-3.

David Furry was driving southbound along the 1900 block of Grove Avenue in a 1978 Ford LTD Country Squire station wagon with his two passengers, plaintiff Diane Nye and her daughter Tina. As the station wagon passed the postal vehicle, there was contact made by the

two vehicles resulting in the quarter panel and bumper on the right rear side of the station wagon making contact with the bumper on the left front side of the postal vehicle.

Upon impact, the station wagon lurched forward and to the left. The impact pushed Furry into the driver's side door, while Diane Nye was pushed forward into her seatbelt, then jerked back. The jerking motion caused pain around Nye's neck, as well as from her sternum to her right shoulder.

The plaintiffs admit that prior to the impact, they did not see the postal vehicle. They also admit that they did not see the vehicles collide, and did not see what had caused the impact.

After the accident, both vehicles stopped in the road. The parties' descriptions of what happened next diverge. According to the plaintiffs, the postal vehicle stopped behind their car, they both told Williams to call the police because they did not have cell phones, and Williams responded to Nye, "Oh, my God. Oh, my God. Oh, this is great. I'm going to get fired. I have to get the rest of this mail delivered. I'm sorry." Plaintiffs' Supplemental Statements of Fact [115-1] ¶ 30-36. The plaintiffs stated that Williams then returned to his postal vehicle and fled the scene. *Id.* ¶ 37.

Meanwhile, according to the government, when Williams got out of the postal vehicle, he spoke only to Furry, offered to pay Furry, but then left without paying believing that no one had been injured. The parties agree that after Williams left the scene, he returned to his assigned route to continue delivering mail, while the plaintiffs drove around for 15-20 minutes in an unsuccessful effort to find him.

About 90 minutes after the accident, and after Furry and Nye had returned to the home they shared, Furry called police to report the accident. Berwyn police officer Tadrowski arrived at the plaintiffs' home and interviewed Furry and Nye for a few minutes. During the interview, the plaintiffs told Officer Tadrowski that Williams had pulled his postal vehicle out from its parking space and struck the back of their station wagon. They also gave the officer the truck number from Williams' vehicle. Nye contends that she told the officer she had a headache, but according to Tadrowski, both Furry and Nye reported that they were fine.

Officer Tadrowski then left the plaintiffs' home and met with postal supervisor Lee Junious. Using the truck number the plaintiffs provided to Officer Tadrowski, Junious determined that Williams was the driver, and Junious and the officer went to view the postal vehicle and talk to Williams, who was still on his route delivering mail. Williams denied any involvement in the accident. However, Officer Tadrowski found damage to the postal vehicle that he believed was consistent with it having collided with the plaintiffs' station wagon.

Officer Tadrowski, Junious, and Williams then went to the plaintiffs' home. Furry and Nye both identified Williams as the driver of the postal vehicle. Williams again denied being

involved in the crash, and denied having ever seen Furry or Nye before. Later, Officer Tadrowski went to the scene of the collision, but found no evidence of an accident.

Although Williams initially denied any involvement in the collision, on the following day he resigned from his employment with the Post Office. In his deposition, he admitted that he had lied to Junious and Officer Tadrowski when he denied being involved in the crash because he was fearful of losing his job. But Williams maintained that he did not drive into the station wagon, and that his postal vehicle was stationary when Furry's station wagon hit it.

Although Furry was not in pain in the hours immediately following the collision, that night he began to feel pain in his shoulder, and stiffness and pain in his neck. Pain in his hip also made it difficult for him to lie down or sleep. In the days that followed he visited his doctor for pain in his neck, shoulder, and left hip. He also began to experience back pain. An x-ray revealed minor degenerative changes of the lower lumbar spine with narrowing at L5-S1. He received physical therapy for his shoulder, hip, and back pain. Eventually he also underwent separate surgeries on his shoulder and back, which fully relieved his shoulder pain and improved his back pain. However, he still has difficulty walking long distances, has had trouble controlling his anger and emotions since the accident, and has had intimacy problems with Nye that have negatively impacted their relationship. Furry intends to have more surgeries to relieve lingering pain.

Nye experienced a headache and eye twitching sometime after the accident, and visited her doctor the following day after she also began experiencing neck pain and her headache had become even worse. Her doctor recommended physical therapy, which helped some days, but on other days her pain only grew worse. She eventually returned to her doctor, who ordered an MRI of her neck, spine, and brain, which revealed disc herniation. After additional, sometimes painful, tests, Nye underwent surgery to remove a herniated disc and a degenerated disc. The surgery only partially relieved her pain, and left her with a scar on the front of her neck. Like Furry, she intends to have more surgeries to relieve the lingering pain.

## CONCLUSIONS OF LAW

The plaintiffs first filed their claim with the United States Postal Service. After the USPS failed to make a final disposition of the claim within six months, the plaintiffs initiated this suit by filing claims of negligence against the United States under the Federal Tort Claims Act. *See* 28 U.S.C. § 2674. Jurisdiction is proper under 28 U.S.C. § 1346(b)(1). The dispute is governed by Illinois law, "the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1).

To prevail on a claim of negligence under Illinois law, a plaintiff must present evidence establishing that (1) the defendant owed the plaintiff a duty, (2) the defendant breached that duty, and (3) the breach was the proximate cause of the plaintiff's injuries. *See Barnett v. Ludwig & Co.*, 960 N.E.2d 722, 730 (Ill. App. Ct. 2011). The burden falls on the plaintiff to establish each of the necessary elements by a preponderance of the evidence. *See Nolan v. Weil-McLain*,

910 N.E.2d 549, 562 (Ill. 2009).

The plaintiffs contend that Williams was negligent when he pulled his postal vehicle out of his parking spot and into the right rear of their station wagon. Under Illinois law, drivers have a duty to exercise ordinary care to avoid placing themselves or others in danger, and to avoid a collision. *See Slaiwa v. United States*, No. 96 C 6759, 1998 WL 59875, at *2 (N.D. Ill. Feb. 4, 1998). Thus, Williams had a duty to avoid hitting the plaintiffs' station wagon.

The court now looks to whether Williams breached that duty. The plaintiffs contend they proved that Williams violated the duty by pulling his vehicle out into oncoming traffic. In support, they cite to their own trial testimony that as they drove along Grove Avenue, they felt an impact to the back right side of the station wagon, and that the impact pushed the station wagon forward and to the left. They further testified that Furry was pushed into the driver's side door, while Nye was pushed forward into her seatbelt. They also cite in support of their theory of negligence Officer Tadrowski's testimony that damage to the postal vehicle was consistent with having impacted the plaintiffs' station wagon, and his conclusion that the damage was consistent with the plaintiffs' contention that the postal vehicle hit their car. Finally, they rely on the fact that Williams fled the scene of the accident, and that the account of events that Williams gave during his deposition cannot be believed because Williams is an admitted liar.

The court carefully observed Furry and Nye while they were on the witness stand, and found their testimony that the station wagon impacted the postal vehicle to be credible. However, they also testified that they never saw the postal vehicle either before or during the impact. Although they both believe that the collision occurred because the postal vehicle drove into them, their belief is not based on any first-hand observation of movement by the postal vehicle, but rather is based on the fact that they felt an impact.

As noted above, the burden falls on the plaintiffs to prove by a preponderance of the evidence that the impact they felt was caused by the negligence of Williams. *Nolan*, 910 N.E.2d at 562. The plaintiffs' testimony does not satisfy that burden because they offered only their subjective beliefs, rather than evidence, of what caused the collision. Although they subpoenaed the one witness who claims to have seen the impact—Williams—when he failed to appear in response to the subpoena, the plaintiffs decided against asking the court to compel his testimony. As a result, the court was afforded no opportunity to determine the credibility of Williams' version of events, which is that his postal vehicle was stationary, and that he saw the station wagon drive into his vehicle. Because the plaintiffs did not compel Williams' testimony, the court was left with no ability to gauge the credibility of the one eyewitness to the impact.

While the plaintiffs' contention that the postal vehicle pulled into the station wagon is plausible, it is not the only scenario that would explain the impact. For instance, given the heavy rains that fell as the plaintiffs drove down Grove Avenue and the resulting diminished visibility, the plaintiffs's station wagon may have inadvertently veered to the right as it passed the postal vehicle, sideswiping the front postal vehicle as the rear of the station wagon passed by. Or

perhaps, unbeknownst to the plaintiffs, their station wagon began to hydroplane on the wet pavement, causing the rear of the station wagon to drift toward the postal vehicle. Such scenarios would be consistent with Williams' deposition testimony that he observed the rear of the station wagon strike the left front of the postal vehicle as the postal vehicle sat stationary.

Whether such alternate explanations for the collision are plausible, or whether it is more likely than not that the collision was caused by the postal vehicle driving into the station wagon, calls for sheer speculation given the plaintiffs' failure to offer evidence that pinpoints the cause of the accident, or present expert testimony on the subject. An expert qualified in the area of accident reconstruction could have examined the damage depicted in photos of the station wagon and postal vehicle, and employed accepted scientific methods in an attempt to determine which of the above scenarios most likely occurred, or rule out scenarios that were not possible given the circumstances and aftermath of the collision. *See* Fed. R. Evid. 702 ("If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, or education, may testify thereto in the form of an opinion . . . .").

Given the absence of expert testimony, the plaintiffs have offered the court no guidance on determining which of the possible scenarios is the more likely explanation for the collision between their station wagon and the postal vehicle. Accordingly, their testimony alone does not satisfy their burden of establishing by a preponderance of the evidence that Williams negligently drove into their station wagon.

Likewise, Officer Tadrowski's testimony does not bolster the plaintiffs' theory of negligence. Although Officer Tadrowski observed the damage to both vehicles, the plaintiffs failed to establish that he has expertise upon which he can opine as to which vehicle drove into the other. Officer Tadrowski admits he has no formal training in accident reconstruction, and did not describe the process employed in reconstructing an accident or whether he followed such a process. The court therefore has no basis to conclude that Officer Tadrowski was qualified to opine as to which vehicle struck the other. *See Bielskis v. Louisville Ladder, Inc.*, 663 F.3d 887, 893-94 (7th Cir. 2011) ("It is the district court's role to ensure that expert testimony is both relevant and reliable. . . . To do so, the district court must ascertain whether the expert is qualified, whether his or her methodology is scientifically reliable, and whether the testimony will "assist the trier of fact to understand the evidence or to determine a fact in issue.") (quoting Fed. R. Evid. 702). Because the plaintiffs did not establish that Officer Tadrowski had any expertise in accident reconstruction, his testimony established only that the postal vehicle and station wagon collided, but not which vehicle was responsible for the collision.

The plaintiffs also contend that they established Williams' negligence with evidence that he fled the scene of the accident. Evidence that a motorist fled the scene of an accident can be "interpreted as an admission of his negligence" because a guilt-free motorist would have "stop[ped] to ascertain the nature of the accident or the extent of the victim's injuries." *Peterson v. Henning*, 452 N.E.2d 135, 138 (Ill. App. Ct. 1983). However, whether such an inference

arises turns on the "nature of the accident" and whether the allegedly-negligent party has a different explanation for his flight from the scene.

Looking to the nature of the accident, the court notes that it is undisputed that (1) the accident occurred while Williams was away from his assigned route, (2) Williams had not sought or received prior authorization to be away from his route, and (3) being off route was a terminable offense. The court also notes that, according to the trial testimony of postal supervisor Lee Junious, "[a]ny accident in the postal service is considered preventable" and grounds for termination, even if the accident is solely the fault of the other driver. Trial Transcript 506:3-13.

The court also takes note that Williams has an explanation for his flight from the scene other than an admission of his negligence. Specifically, according to the testimony of Furry, Williams expressed a concern that he would be fired for not finishing his route:

Q.     All right. Were you able to overhear that conversation in any way?

A.     Yeah, because they weren't that far away. He was worried about getting fired. He said he had to get his mail out: I'm going to get fired.

Trial Transcript 28:13-15.

The facts of this case do not give rise to an inference of negligence based on Williams' failure to wait for police to be called to the scene. Specifically, Williams had reason to fear being terminated if he remained at the scene for reasons unrelated to his negligence. He stated a fear of being terminated for not delivering his mail as scheduled. He also had reason to fear being terminated for being off his route, as well as for being involved in an accident even if the accident was not his fault. Because explanations for his flight from the scene exist that are unrelated to negligence, the facts of this case do not give rise to an inference of negligence. *See Peterson*, 452 N.E.2d at 138 (whether inference of negligence arises turns on the circumstances surrounding the accident and alternate explanations for defendant's flight).

Finally, the plaintiffs contend that Williams is not a credible witness and, therefore, their version of events is essentially unrebutted. However, as discussed above, the court had no opportunity to gauge Williams' credibility for itself because the plaintiffs chose not to ask the court to compel his attendance at trial and decided, instead, to rely on his deposition testimony. But more fundamentally, as discussed above, the plaintiffs' testimony establishes only that their station wagon and the postal vehicle collided, not which vehicle was responsible for the collision. Accordingly, even if their testimony is unrebutted, it still falls short of establishing that the collision was due to Williams' negligence.

The court notes that in their brief, the plaintiffs briefly mention that although no evidence of their own negligence was presented, if the court were to find them responsible for the collision

because of their own negligence, the court should allocate fault among the parties under Illinois' statutes on comparative negligence, *see* 735 Ill. Comp. Stat. 5/2-1116, and joint liability, *see* 735 Ill. Comp. Stat. 5/2-1117. As discussed above, the record contains insufficient evidence from which the court can discern the cause of the collision at issue. Accordingly, it has no basis for allocating fault among the parties under the comparative negligence or joint liability statutes.

In summary, the court appreciates that the plaintiffs believe that the postal vehicle caused the accident and, therefore, they are entitled to redress. Nevertheless, the evidence presented by the plaintiffs at trial established only that their station wagon and the postal vehicle collided. It did not satisfy their burden of establishing by a preponderance of the evidence that the collision was caused by Williams' negligence and, therefore, they have not prevailed on their claim against the United States. *See Nolan*, 910 N.E.2d at 562 (the plaintiff bears the burden of establishing each element of a claim of negligence by a preponderance of the evidence). Because they have not established the breach of a duty, the court need not address the issues of proximate cause and damages.

## CONCLUSION

For the reasons given, the plaintiffs have failed to establish that their collision was caused by the negligence of the postal vehicle driver. Therefore, the government is entitled to judgment in its favor. The clerk is directed to enter a Rule 58 judgment and to terminate this case from the court's docket.

ENTER:

DATE: March 13, 2012                    *Blanche M. Manning*
                                        Blanche M. Manning
                                        United States District Judge